Case: 1:21-mj-00329
Assigned To : Harvey, G. Michael
Assign. Date : 3/22/2021
Description: Complaint w/ Arrest Warrant

## STATEMENT OF FACTS

Your Affiant, Andrew Cramlet is a Special Agent with the Federal Bureau of Investigation ("FBI"). Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As an FBI Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of violations of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol and include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 27, 2021, the FBI Cincinnati Field Office received a tip from an individual identified as Witness 1. Witness 1 provided law enforcement with his/her full name and contact information. According to Witness 1, he/she knew that JONES was involved in the riot at the Capitol building on January 6, 2021. Witness 1 is familiar with JONES and has known JONES for years.

According to Witness 1, while watching television coverage of the Capitol riot, he/she observed JONES outside of the Capitol building. On the same day, Witness 1 spoke to an individual identified as Witness 2. While speaking with Witness 2, Witness 1 learned that JONES contacted Witness 2 while he was inside of the Capitol building. JONES spoke to Witness 2 via telephone and sent text messages and video of himself while he was inside of the Capitol. Witness 2 told Witness 1 that JONES accessed the Capitol building by scaling an exterior wall of the building. Witness 1 also learned that while inside of the building, JONES was subjected to tear gas before being escorted outside of the Capitol building by law enforcement.

Witness 1 told law enforcement that he/she believed that Witness 2 knew about JONES's conduct at the Capitol and what occurred inside the building. Additionally, Witness 1 knew of a third individual, identified as Witness 3, whom he/she believed also knew that JONES was inside of the Capitol building on January 6, 2021. Witness provided contact information for Witness 2 and Witness 3.

Witness 1 provided law enforcement with screenshots sent to him/her from Witness 2. The screenshots depicted the conversation between JONES and Witness 2 on January 6, 2021. In the conversation, JONES admitted that he had entered the U.S. Capitol building.

In addition to the text conversation, Witness 1 provided two photographs he/she obtained from Witness 2. In the first photograph, JONES was climbing the Capitol building wall in an effort to enter the Capitol. In the second photograph, JONES was standing at the top of the wall and taking a photograph of the crowd. Witness 1 identified JONES as being the person he/she has known in the photographs.

On January 29, 2021, law enforcement interviewed Witness 2. Witness 2 admitted that he/she knows JONES and that he/she had spoken to JONES about his involvement in the riot. Witness 2 confirmed that JONES sent Witness-1 text screenshots of his/her communications with JONES in addition to the two photographs depicting JONES climbing the exterior wall and inside the Capitol.

According to Witness 2, Witness 2 received a telephone call from JONES on the day of the Capitol Riot. JONES contacted Witness 2 from a telephone assigned number ending in -0960. Witness 2 was familiar with this telephone number and knows it to be JONES' telephone number.

Witness 2 provided FBI with the Facebook handle for JONES, http://www.facebook.com/caleb.jones.735. Additionally, Witness 2 provided copies of the text

2

messages between Witness 2 and JONES, as well as screenshots of how Witness 2 is saved inside of JONES' telephone.

In addition to the text communication, JONES utilized Facebook messenger to send videos to Witness 2 that he created while he was inside and outside of the Capitol building. Witness 2 told law enforcement that he/she had reason to believe that JONES may have sent video footage of his entry into the building and his presence outside of the building to Witness 3.

After meeting with Witness 2, FBI interviewed Witness 3 on or about January 27, 2021. During the interview, Witness 3 admitted that he/she knew JONES and has known him for years. When asked about JONES attending the Capitol riot, Witness 3 denied knowing that JONES participated in the riot. Witness 3 admitted that JONES traveled to Washington D.C. for the riot. Witness 3 admitted that he/she saw photographs that JONES took of the crowd and a photograph that JONES took of other rioters climbing the wall. Additionally, Witness 3 admitted that JONES told him/her that he was subjected to tear gas, although Witness 3 would not confirm that JONES was inside the building.

The interviewing agent noticed that Witness 3 appeared reluctant to place JONES inside of the Capitol building. When shown a photograph of JONES climbing the exterior wall of the building, Witness 3 claimed that he/she could not recognize JONES from a rear-view picture. Additionally, Witness 3 claimed that while JONES told Witness 3 that he was able to get video footage of rioters going inside of the Capitol, Witness 3 stated that he/she could not confirm if JONES was inside of the Capitol building because he/she was not in Washington D.C. Witness 3 also attempted to explain to law enforcement that JONES could have been tear gassed while he was in the crowd.

In response to Witness 3's conduct, the interviewing agent advised Witness 3 that it is a federal offense to make a false statement to a federal law enforcement agent during the course of an investigation. Thereafter, Witness 3 cooperated with the remainder of the interview.

Witness 3 admitted that he/she did believe that JONES went inside the Capitol building. Witness 3 stated that he/she observed video created by JONES and saw a police officer in the video. Witness 3 based his/her belief upon the fact that he/she observed the inside floor, ramps, rioters walking inside the building, and security guards inside the building. Witness 3 also admitted that he/she believed that JONES only went inside the building because he was allowed to enter. While Witness 3 stated that he/she has not been inside of the building, Witness-3 believed that the video from JONES was taken inside of the building because the video included a large amount of people inside the building.

Your Affiant has reviewed still shots taken of JONES inside of the U.S. Capitol building and compared the still shots to JONES' Facebook page, driver's license, and photographs that JONES took of himself. Upon reviewing the photographs, your Affiant has confirmed that the individual described herein is consistent in appearance with JONES.





    Based on the foregoing, your Affiant submits that there is probable cause to believe that Caleb JONES violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or

official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so.

For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that JONES violated 40 U.S.C. §§ 5104(e), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
Agent Andrew Cramlet, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 23rd day of March, 2021.

_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE